STATE *ex rel.* CAMPER *v.* POLLARD *et al.*

(*Jackson,* April Term, 1949.)

Opinion filed July 9, 1949.

VESTER G. BRADY, of Jackson, for appellants.

P. M. HARBERT, of Savannah, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Camper's bill sought a writ of *mandamus* requiring the beer committee of Hardin County either to issue him a permit to sell beer in accordance with his application or to set a date for a hearing on his application. He has appealed from the decree of the Chancellor adjudging that Court to be without jurisdiction. Camper's bill alleges that he has complied with all the rules with reference to the obtaining of a permit, but that the beer committee has arbitrarily refused to issue it, or to have a hearing upon his application. The statement of his bill is that it is the purpose of the beer committee to prevent or eliminate the sale of beer in that county by refusing to give anybody a permit.

The answer of the beer committee is that it considered and denied his application because of many protests from the community in which it was proposed to sell beer, and for other unspecified reasons, and denied the application for "what they thought the greatest good".

■ It is settled beyond the point of controversy that *mandamus* will not lie to coerce a county beer committee to issue anybody a permit. *Simmons* v. *Latimer,* 186 Tenn. 577, 212 S. W. (2d) 386. It is unnecessary, therefore, to further discuss that phase of the question.

■ There seems to be some confusion, however, among the members of the profession as to whether it is the duty of the beer committee to have a formal hear-

ing upon an application for a permit to sell beer. Therefore, this Court will refrain from considering other objections which might be fatal to this proceedings, and go directly to the question of whether the beer committee must have a formal hearing before declining such application.

Code Section 1191.14 provides for the issuance and revocation of permits by the quarterly court, or its beer committee. It is significant that this Section expressly gives the holder of a permit a right to a hearing in the manner pointed out by the statute upon the question of revoking his permit. This statute does not provide for a hearing upon the question of whether an application for a permit shall be granted or refused. This condition of the statute makes it logical to conclude that the legislature did not intend to require the beer committee to have a formal hearing upon applications for a permit, but intended that it should make such investigation as it deemed necessary, then act thereon in granting or refusing the application.

This distinction made in the statute between the obtaining of a permit and the revocation of one is logical. Since it is within the power of the State to prohibit entirely the sale of beer, *McCanless, Commissioner* v. *Klein*, 182 Tenn. 631, 636, 639, 188 S. W. (2d) 745, it is neither illogical nor unjust that the State vest in its agent, the beer committee, the authority to determine without a formal hearing whether a given application should be granted. On the other hand, once the application is granted and the applicant has arranged his affairs accordingly, it would be unreasonable and oppressive to permit its revocation without any cause whatsoever. *Wise* v. *McCanless*, 183 Tenn. 107, 114, 191 S. W. (2d)

169. No doubt, it was to guard against such a situation that the Legislature provided in Code Section 1191.14 for formal hearing prior to revocation.

The very broad authority of the beer board in the matter of issuing a permit was noticed in *Grubb* v. *Mayor & Aldermen of Morristown,* 185 Tenn. 114, 203 S. W. (2d) 593, 595, by the statement of this Court that ''We find nothing'' in the beer statute ''making it mandatory upon any beer board or licensing authority to issue a beer permit or whisky license to anyone.''

The fact that the beer board is prohibited from issuing a permit to any one who does not meet specified requirements carries no implication that a permit must be issued to all applicants who do meet such requirements. If this were the rule, any county of the State could be honeycombed with places where beer is sold, without necessarily violating the prohibitions of the statute.

It is said that the power to decline application for a permit without a hearing places it within the power of the beer committee to absolutely prohibit the sale of beer in the county which it represents. In *Cravens* v. *Storie,* Mayor, 175 Tenn. 285, 133 S. W. (2d) 609, the Court in dealing with the beer statute said:

''Looking to the Beer Act in its entirety, we think it is in the nature of a local option law in the sense that the Legislature intended that each municipality, looking to the morals and general welfare of its citizens, should have a wide discretion in not only regulating the traffic in beer but in determining to whom licenses should be issued for that purpose.'' 175 Tenn. at page 288, 133 S. W. (2d) at page 610.

The ''local option'' referred to in the above quotation, meaning the county, is vested by the statute in

the quarterly court. It selects the beer committee. That committee serves at its will and pleasure. State ex rel. *Thurman* v. *Scott*, 184 Tenn. 76, 80, 195 S. W. (2d) 617. If the beer committee is not acting in accordance with the wishes of the county (its Quarterly Court), the discharge of that committee may be effected at once and a committee representing the wishes of this county within the law may be substituted.

 It is no doubt true that the absence of a formal hearing upon applications for a permit places it within the power of the beer committee to favor one above another, but this is true in the administration of any law of this character. Reliance must be placed upon the presumption that the beer committee will do its duty impartially. If it fails therein, the remedy is in the appeal to the representatives of the people, its quarterly court.

Considering the fact that the statute was dealing with intoxicating liquor, a subject most difficult to regulate, and considering it in the light of the further fact that the act expressly provides for a formal hearing in the matter of a revocation, but refrains from so providing in the matter of granting a permit, we cannot escape the conclusion that if it had been the intention of the Legislature that each applicant have a formal hearing, and an appeal therefrom in the event of refusal, the act would have said so, just as it does, for instance, in Code Section 6236.27 with reference to the refusal of the insurance commissioner to grant an application for a license to write insurance.

 Our conclusion is that the Court was without authority to require the beer committee to have a formal hearing upon Camper's application, and that the dismissal of his bill was proper.

■ The attorney representing the beer board has requested us to fix his fee in this case. The beer board which is before the Court has no funds out of which such fee could be paid. The county is not otherwise before the Court. It is doubtful, therefore, that we have such authority as that requested.

Counsel has rendered valuable services, and the services of an attorney to represent the beer board were necessary. The situation of the case is such, however, that this seems to be a matter which should be taken up initially with the Quarterly Court.

The decree of the Chancellor is affirmed with costs adjudged against Camper.

All concur.